Marshall Webster **BARNES**, Appellant,

v.

The **STATE** of Texas, State.

**Ex parte Marshall Webster BARNES.**

**Nos. 2–01–048–CR, 2–01–051–CR.**

Court of Appeals of Texas,
Fort Worth.

Jan. 24, 2002.

Discretionary Review Refused
May 22, 2002.

Casey & Colosi, Terry M. Casey, Michael Logan Ware, Forth Worth, for Appellant.

Tim Curry, Crim. Dist. Atty., Charles M. Mallin, Chief of Appellate Section, Michael R. Casillas, Steve Jumes, Sean Colston, Ass't. Dist. Atty's, Fort Worth, for Appellee.

PANEL B: HOLMAN, GARDNER, and WALKER, JJ.

## OPINION

GARDNER, Justice.

### INTRODUCTION

Appellant, Marshall Webster Barnes was convicted by a jury of the felony offense of burglary of a habitation.[1] The jury found allegations in the enhancement and habitual paragraphs of the indictment to be true and sentenced Appellant to life imprisonment.[2] In this consolidated appeal, Appellant seeks review of the trial court's denial of his pre-trial application for writ of habeas corpus relief and appeals from his conviction.

In Appellant's appeal from the denial of his application for habeas corpus relief, he argues that his indictment's enhancement paragraph unconstitutionally utilized an April 30, 1973 conviction for theft that had been previously used for enhancement purposes. Specifically, Appellant argues that the trial court's application of Texas Penal Code 12.46, allowing the unlimited use of a prior conviction for enhancement purposes, violates his *ex post facto* and double jeopardy rights.

In Appellant's direct appeal, he presents two issues. In his first issue, Appellant argues that the trial court erred by denying his requested jury instruction on the defense of entrapment. In his second issue, Appellant contends the trial court

---

1. TEX. PENAL CODE ANN. § 30.02 (Vernon Supp. 2002).

2. TEX. PENAL CODE ANN. § 12.42(d) (Vernon Supp.2002).

erred in denying his request for a mistrial on the ground that the prosecutor made an improper jury argument by injecting his personal opinion that Appellant lied. We affirm the denial of the relief sought in Appellant's application for writ of habeas corpus and affirm Appellant's conviction and sentence.

## PRE–TRIAL FACTS AND PROCEDURAL HISTORY

Appellant's August 9, 1999 indictment for burglary of a habitation contained enhancement and habitual offender allegations. Appellant was placed on notice of the State's intent to prove his prior convictions for burglary in 1994 and theft of corporeal property of $50.00 or more in 1973. Appellant filed a pre-trial application for writ of habeas corpus, arguing that the State improperly used his 1994 and 1973 convictions for enhancement purposes. Appellant argued that his 1994 burglary conviction was improperly used because it had been enhanced with his 1973 theft conviction. Appellant also argued that his 1973 conviction had already been used to enhance his 1994 offense and, therefore, could not have been used to enhance any subsequent offenses.

The trial court denied Appellant's claims for habeas corpus relief. Appellant appeals contending that his 1973 conviction cannot be used to enhance any subsequent offenses because that conviction occurred prior to the enactment of section 12.46 of the Texas Penal Code, allowing for unlimited use of a prior conviction for enhancement purposes.

## TRIAL FACTS AND PROCEDURAL HISTORY

In early August of 1999, Fort Worth experienced a string of burglaries, all of which occurred in the same manner. Appellant was developed as a suspect, and a SWAT team of officers began surveillance on him. On August 9, 1999, at approximately 10:30 a.m., police watched Appellant as he left his home in his pickup truck and followed him as he drove through several neighborhoods. Fourteen or fifteen officers monitored his movements, accompanied by a police helicopter. Appellant stopped his pickup truck on several occasions at different houses. On each of these occasions, Appellant would leave his pickup truck and approach the house on foot before returning to his pickup truck.

After visiting several houses, Appellant approached the private residence of Walter Williams and his family. Appellant stayed at the front door for a short period of time. Appellant drove through the neighborhood one more time before returning and parking his truck two blocks from the Williams residence.

After exiting his pickup truck, Appellant approached the Williams residence on foot and entered the backyard. While Appellant was entering the backyard, Officer Richard Gomez was getting permission for access to the backyard of the home next to the Williams residence. While the officer was in the neighbor's backyard, he heard the sound of breaking glass coming from the rear of the Williams residence. Approximately thirty minutes later, the officer saw Appellant exit the Williams residence. As Appellant left to get his pickup truck, the officer approached the back of the Williams residence and noticed two punch holes in a window near the back door's locking mechanism.

Before Appellant returned with his pickup truck, the officer returned to a place where he could observe Appellant as he drove his pickup truck into the Williams garage and closed the garage door behind him. After Appellant closed the garage door, the police decided they would arrest

him when the garage door opened again. Appellant opened the garage door a few moments later and officers moved in to make the arrest.

Officer Detrick Jones entered the garage and found Appellant in the bed of the pickup truck. When the officer announced himself as a police officer, Appellant looked surprised and bolted back into the Williams residence. After kicking in the door, the officer quickly apprehended Appellant inside the Williams residence.

Officers found several pieces of the Williams family jewelry in Appellant's pockets and found several pieces of the Williams family personal property stacked in a manner that would facilitate its being stolen. Williams testified that he did not know Appellant, nor did he give Appellant permission to enter his home or take his property.

At trial, Appellant testified in his defense that, approximately two months before, while looking at a house for lease, he had been detained by officers who threatened to arrest him for possession of a burglary tool unless he agreed to help them build cases against two "fences," people who bought and sold stolen property. Appellant claimed that, through his dealings with Sergeant G.M. Pruitt, Officer Gene Jones, and Officer Paul Davis, he had sold property that had been supplied to him by the police to the two fences. Appellant testified that Sergeant Pruitt thereafter told him that he would have to acquire more property on his own to fence "that was recently taken out of a burglary or something" because the property furnished to him by police was too old to trace.

Appellant further testified that Officer Pruitt told him that the police would "cover [his] back" but that he would go to jail if he did not assist them. Appellant also testified that, when he was found in the Williams residence, he was not taking the property of his own intent or design. When cross-examined, Appellant testified that he was not guilty of burglary because the police coerced him into committing the crime.

Officers Pruitt, Jones and Davis testified at trial that they had made no such deal with Appellant, nor had they coerced him into committing the burglary. The officer that had initially detained Appellant two months prior to the day of the Williams burglary testified that he only held Appellant for fifteen minutes and that no one encouraged or coerced him to work undercover with the police. The officer that transported Appellant from the crime scene at the Williams residence testified that Appellant made the statement, "You got me on this one." The same officer also indicated that Appellant said he was not going to "give up his fence." Based on the evidence presented regarding Appellant's activity at the Williams residence, the jury found Appellant guilty of burglary of a habitation.

During the sentencing phase of Appellant's trial the State proved up prior convictions of theft of corporeal personal property, burglary, theft of property over $50.00, burglary of a habitation, two convictions for robbery, and another burglary. Appellant also admitted to a 1993 conviction for misdemeanor theft. Consistent with section 12.42(d) of the Texas Penal Code, penalties for repeat and habitual felony offenders, the jury sentenced Appellant to life imprisonment.

## DISCUSSION

### I. Appeal from Denial of Habeas Corpus Relief

In Appellant's appeal from denial of his petition for habeas corpus relief, he contends that the State's repeated use of his

1973 conviction for theft for the purpose of sentencing enhancement violates both the Texas and United States Constitutions. Specifically, Appellant argues that the State's repeated use of his 1973 theft conviction to enhance both the 1994 and 2001 sentences violates both his *ex post facto* and double jeopardy rights.

### Habeas Corpus Standard of Review

■ We have jurisdiction to review the decision of the trial court in denying habeas corpus relief. TEX.R.APP. P. 31.1; *Ex parte Dixon*, 964 S.W.2d 719, 722 (Tex. App.-Fort Worth 1998, pet. ref'd). We review the record as it existed before the trial court at the habeas hearing to determine whether the court erred in failing to grant relief. *Ex parte Dixon*, 964 S.W.2d at 722. In reviewing the decision of the habeas court, we review the findings in the light most favorable to the ruling and uphold the decision absent an abuse of discretion. *Id.; Ex parte Primrose*, 950 S.W.2d 775, 777–78 (Tex.App.-Fort Worth 1997, pet. ref'd). The Appellant bears the burden of proof at the habeas proceeding. *Ex parte Kimes*, 872 S.W.2d 700, 703 (Tex. Crim.App.1993); *Ex parte Storm*, 49 S.W.3d 401, 402 (Tex.App.-Fort Worth 2000, no pet.).

### Ex Post Facto

Appellant initially asserts that the trial court's enhancement of his 2001 burglary conviction with his 1973 theft conviction, which had already been used to enhance a 1994 conviction, violates the Texas and United States Constitutions *ex post facto*

---

3. Act of May 22, 1979, 66th Leg., R.S., ch. 459, § 1, 1979 Tex. Gen. Laws 1027, 1027 (effective June 7, 1979).

4. In *Ex parte White*, 538 S.W.2d at 418, the court of criminal appeals stated:
 It has long been the rule in this State that prior convictions cannot be used more than once to enhance punishment. This rule

clauses. U.S. CONST. art. I, § 10, cl. 1; TEX. CONST. art. I, § 16. Appellant argues that, at the time of Appellant's 1973 conviction in cause number C72–10789 HJ, the law allowed a prior conviction to be used only once to enhance punishment. *Ex parte White*, 538 S.W.2d 417, 418 (Tex. Crim.App.1976). Effective June 7, 1979, the legislature enacted Texas Penal Code, section 12.46,[3] which provides: "The use of a conviction for enhancement purposes shall not preclude the subsequent use of such conviction for enhancement purposes." TEX. PENAL CODE ANN. § 12.46 (Vernon 1994).

The record establishes that Appellant's 1973 theft conviction was used in 1994 to enhance punishment for a burglary conviction. The record also reflects that the same 1973 conviction was again used to enhance the sentence for his 1999 offense. Appellant contends that because his 1973 conviction occurred prior to the legislature's enactment of section 12.46, the older common law rule must govern and the prior conviction could only be utilized to enhance the 1994 conviction and not the conviction for the 1999 offense.

Appellant asserts that his case is controlled by the common law rule in force at the time the offense used to enhance punishment was committed.[4] He also argues that it is immaterial that his offense occurred in the instant case, indictment was returned, and his trial conducted, after section 12.46 went into effect.

■ The longstanding definition of *ex post facto* is:

 has been subject to the exception that 'the use of a prior conviction to enhance the punishment as a second offender does not preclude the State from again using that conviction to fix the status of an habitual criminal.'
 *Id.* (citations omitted).

A law which changes the punishment for a crime after the crime has been committed is an ex post facto law as prohibited by Tex. Const., Art. I, Sec. 16, Vernon's Ann. St. and U.S. Const., Art. I, Sec. 10, only if it inflicts a greater punishment than did the previous law. *Ex parte Tate*, 471 S.W.2d 404, 406 (Tex. Crim.App.1971). The types of legislation that implicate the *ex post facto* provisions of the constitutions are: (1) every law that makes an action done before passing of the law, and which was innocent when done, criminal; (2) every law that aggravates a crime and makes it greater than it was when committed; (3) every law that changes the punishment, and inflicts a greater punishment than the law annexed to the crime when committed; (4) every law that alters the legal rules of evidence and receives less or different testimony than the law required at the time of the commission of the offense, in order to convict the offender. *Collins v. Youngblood*, 497 U.S. 37, 42, 110 S.Ct. 2715, 2719, 111 L.Ed.2d 30 (1990); *Grimes v. State*, 807 S.W.2d 582, 586 (Tex.Crim.App.1991); *Weston v. State*, 870 S.W.2d 197, 198 (Tex. App.-Fort Worth 1994, no pet.).

■ Appellant relies primarily upon *Ex parte Bonham*, to support his contention that to use his 1973 conviction a second time to enhance the punishment would constitute an impermissible *ex post facto* application of section 12.46. 707 S.W.2d 107 (Tex.Crim.App.1986). The court of criminal appeals in that case addressed the issue of interpreting section 12.46 in light of an *ex post facto* challenge. *Id.* at 107. *Ex parte Bonham* is distinguishable. In *Ex parte Bonham*, both primary offenses as well as the enhancing offense occurred prior to the enactment of section 12.46; therefore, the court held that the statute was not applicable and the prior conviction could be used to enhance only one subse-

quent offense. *Id.* at 108–09. Unlike *Ex parte Bonham*, Appellant's 1999 burglary offense occurred after the enactment of 12.46; therefore, the statute is applicable.

■ The focus of any *ex post facto* inquiry is whether the change in the law alters the definition of criminal conduct or increases the penalty by which a crime is punishable. *Moore v. State*, 54 S.W.3d 529, 545 (Tex.App.-Fort Worth 2001, pet. filed); *Cortez v. State*, 36 S.W.3d 216, 220 (Tex.App.-Houston [14th Dist.] 2001, pet. ref'd). When a court engages in *ex post facto* analysis, it should be concerned solely with whether the statute assigns more disadvantageous criminal or penal consequences to an act than did the law in place when the act occurred. *Moore*, 54 S.W.3d at 545.

■ Here the question of law has already been answered for us. In *Vasquez v. State*, the Court of Criminal Appeals stated:

It is well settled that a conviction which occurred prior to the enactment of a statute providing for increased punishment upon a subsequent conviction may be used for enhancement purposes under that statute, and that such usage is not unconstitutional as being an ex post facto application of the statute.

477 S.W.2d 629, 632 (Tex.Crim.App.1972) (citing *Gryger v. Burke*, 334 U.S. 728, 68 S.Ct. 1256, 92 L.Ed. 1683 (1948)); *Gomez v. State*, 162 Tex.Crim. 30, 280 S.W.2d 278 (1955); *accord Bond v. State*, 700 S.W.2d 36, 38 (Tex.App.-Beaumont 1985, pet. ref'd). The reason that a conviction that occurred before the statute was enacted may be used for enhancement is that the statute providing for a greater penalty upon a subsequent conviction does not seek to punish the offender for the original criminal activity a second time; rather, repetition of criminal conduct aggravates guilt and justifies heavier penalties. *Gra-*

*ham v. West Virginia,* 224 U.S. 616, 623, 32 S.Ct. 583, 585, 56 L.Ed. 917 (1912); *Vasquez,* 477 S.W.2d at 632; *Bond,* 700 S.W.2d at 38.

In the case at bar, the date of the primary offense was August 9, 1999. At that time, the law provided that punishment for burglary enhanced by two prior felonies was life or any term of years not more than 99 years or less than 25 years. TEX. PENAL CODE ANN. § 12.42(d). The law further allowed for an offense to be enhanced by a prior felony that had already been previously used for enhancement. TEX. PENAL CODE ANN. § 12.46. Section 12.46 does not increase the penalty by which the 1973 crime was punishable nor does it have the effect of increasing the punishment for Appellant's current offense after the date of its commission; rather, section 12.46 allows use of the previous conviction to increase punishment for the current offense. As such, use of section 12.46 in this instance does not fit the definition of *ex post facto.* Therefore, we hold that the enhancement does not violate Appellant's *ex post facto* rights.

### Double Jeopardy

 Next, Appellant advances the argument that use of his 1973 burglary conviction to enhance both his 1994 and 2001 conviction violated his right against double jeopardy. Specifically, Appellant argues that his 1973 conviction was already used for enhancement in 1994 and, therefore, it could not be applied to his 2001 conviction. Appellant again maintains that section 12.46 of the Texas Penal Code does not apply to his 1973 conviction.

 The Double Jeopardy Clause of the United States Constitution provides that no person shall be subjected to twice having life or limb in jeopardy for the same offense. U.S. CONST. amend. V. Double jeopardy protects against: (1) a second prosecution for the same offense

after acquittal; (2) a second prosecution for the same offense after conviction; and (3) multiple punishments for the same offense. *United States v. Dixon,* 509 U.S. 688, 695–96, 113 S.Ct. 2849, 2855–56, 125 L.Ed.2d 556 (1993); *Ex parte Herron,* 790 S.W.2d 623, 624 (Tex.Crim.App.1990) (op. on reh'g); *Ex parte Watkins,* 52 S.W.3d 858, 861 (Tex.App.-Fort Worth 2001, pet. granted).

 Double jeopardy principles are generally not applicable to non-capital sentencing proceedings. *Monge v. California,* 524 U.S. 721, 724–25, 118 S.Ct. 2246, 2248–53, 141 L.Ed.2d 615 (1998); *Bell v. State,* 994 S.W.2d 173, 175 (Tex.Crim.App.1999); *State v. Webb,* 980 S.W.2d 924, 927 (Tex. App.-Fort Worth 1998), *aff'd,* 12 S.W.3d 808 (Tex.Crim.App.2000). Enhanced punishments for repeat offenders do not violate the Double Jeopardy Clause of the United States Constitution because such enhanced punishments neither place a defendant in jeopardy of being twice tried for an offense nor subject such a defendant to additional punishment for the previous offense used for enhancement purposes. *Witte v. United States,* 515 U.S. 389, 400, 115 S.Ct. 2199, 2206–07, 132 L.Ed.2d 351 (1995). Enhanced punishments for repeat offenders do not violate the Texas Constitution either because, "[e]xcept in cases where the prosecution causes a mistrial, the Texas Constitution gives no greater protection then the United States Constitution regarding double jeopardy." *Webb,* 980 S.W.2d at 927 (citing *Stephens v. State,* 806 S.W.2d 812, 815 (Tex.Crim.App.1990), *cert. denied,* 502 U.S. 929, 112 S.Ct. 350, 116 L.Ed.2d 289 (1991)).

Appellant relies on *Cooper v. State,* 631 S.W.2d 508 (Tex.Crim.App.1982) for the proposition that the Double Jeopardy Clause of the United States Constitution prohibits the State from attempting to

prove the same prior allegation in another trial. However, *Cooper* has been expressly overruled by *Bell* on that direct issue. *Bell*, 994 S.W.2d at 175. We hold that double jeopardy does not bar prosecution in this case.

Having addressed both of Appellant's arguments, we overrule Appellant's issue on his appeal from denial of the relief sought in his petition for writ of habeas corpus.

## II. Appeal from Conviction

Appellant advances two issues on appeal from his conviction for burglary of a habitation. In his first issue, Appellant argues that the trial court erred by denying his requested jury instruction on the defense of entrapment. In his second issue, Appellant maintains that the trial court erred in denying his request for a mistrial based on the prosecutor's injection of personal opinion during closing argument. We disagree with Appellant on both issues and affirm his conviction.

### Entrapment Jury Charge

In his initial issue, Appellant argues that the trial court erred in denying his jury instruction regarding the defense of entrapment. Appellant contends that he testified during the guilt/innocence phase of the trial, admitted his guilt in the charged burglary, and told of being coerced by police officers to participate in a "sting operation." Appellant maintains that he properly and timely requested a charge for entrapment that was denied by the trial court. Appellant further argues that the only basis for denial of his jury charge request was the trial court's usurpation of the role of the jury. Appellant finally notes that if we, the reviewing court, find the existence of any harm, he is entitled to reversal.

A charge on a defensive issue is required if the accused presents affirmative evidence that would constitute a defense to the crime charged and a jury charge is properly requested. *Miller v. State*, 815 S.W.2d 582, 585 (Tex.Crim.App. 1991); *Brazelton v. State*, 947 S.W.2d 644, 646 (Tex.App.-Fort Worth 1997, no pet.). In determining whether evidence raises a defense, the credibility of the evidence is not at issue. *Muniz v. State*, 851 S.W.2d 238, 254 (Tex.Crim.App.), *cert. denied*, 510 U.S. 837, 114 S.Ct. 116, 126 L.Ed.2d 82 (1993); *Shafer v. State*, 919 S.W.2d 885, 887 n. 1 (Tex.App.-Fort Worth 1996, pet. ref'd). In other words, if a defendant produces evidence raising each element of a requested defensive instruction, he is entitled to the instruction regardless of the source and strength of the evidence. *Hamel v. State*, 916 S.W.2d 491, 493 (Tex. Crim.App.1996); *Brazelton*, 947 S.W.2d at 646. Unlike legal challenges to the sufficiency of the evidence, we review the evidence offered in support of the defensive issue in the light most favorable to the defense. *Brazelton*, 947 S.W.2d at 646; *Shafer*, 919 S.W.2d at 887 n. 1.

Entrapment exists if the criminal intent originates in the mind of the police agent and the agent then induces the accused to commit the offense. *Torres v. State*, 980 S.W.2d 873, 875 (Tex.App.-San Antonio 1998, no pet.). Entrapment does not exist where the police agent merely furnishes the opportunity for the commission of the offense. *Rodriguez v. State*, 662 S.W.2d 352, 355 (Tex.Crim.App.1984); *Torres*, 980 S.W.2d at 875.

Texas Penal Code section 8.06 provides the definition and elements of entrapment. It reads:

(a) It is a defense to prosecution that the actor engaged in the conduct charged because he was induced to do so by law enforcement agent using persua-

sion or other means likely to cause persons to commit the offense. Conduct merely affording a person an opportunity to commit an offense does not constitute entrapment.

(b) In this section "law enforcement agent" includes personnel of the state and local law enforcement agencies as well as of the United States and any person acting in accordance with instructions from such agents.

TEX. PENAL CODE ANN. § 8.06 (Vernon 1994).

■ If evidence supporting the defense of entrapment is admitted, the issue must be submitted to the jury with the instruction that a reasonable doubt on the issue requires acquittal. TEX. PENAL CODE ANN. § 2.03(c), (d) (Vernon 1994). The test for entrapment under Texas Penal Code section 8.06 is a two-pronged test comprised of subjective and objective elements. *England v. State*, 887 S.W.2d 902, 913 (Tex.Crim.App.1994); *McGann v. State*, 30 S.W.3d 540, 545 (Tex.App.-Fort Worth 2000, pet. ref'd). First, the accused must show that they were induced by law enforcement to engage in the illegal conduct. *England*, 887 S.W.2d at 913. This first prong is a subjective test. The accused must show that because of police persuasion they were induced to act. *Id.* Second, the accused must show that the conduct that induced them to act would have induced an ordinary person. *Id.* This second prong is an objective test.

The evidence presented at trial favorable to the requested defense of entrapment was limited solely to the testimony of the defendant. Appellant testified that in the morning hours of late June, 1999, he was looking at a home that was advertised for lease. Due to a call by one of the neighbors, a Watauga police officer stopped him when he returned to his car. After a brief conversation with Appellant, the officer called in and found out that Appellant had a prior criminal record. Then the officer handcuffed Appellant and put him in the back of his police car. Police officers from Watauga, Richland Hills, North Richland Hills, and the Fort Worth Police Departments came to the scene.

According to Appellant's testimony, the officer from the Fort Worth Police Department threatened to arrest him for possession of burglary tools, a screwdriver, if he did not cooperate with police in trying to make a case against two fences named Willie Ham and "Big John." The officer's proposal was that Appellant would sell stolen goods to these fences and each transaction would be videotaped. Appellant agreed to the arrangement and met the police a week later at a car wash.

Appellant further testified that the police officers gave him a television and two video cassette recorders to sell to Ham. After Appellant sold the items to Ham, the police contacted Appellant a week later and gave him some tools, a skill saw, a sander, and a small air compressor to sell to Ham. Ham did not want the tools but Ham called Big John, who bought them for $300.

According to Appellant, he was in the Wilson residence on August 9, 1999 because a police officer had told him that the property that they had previously supplied him was too old to trace to the crime, and he had to come up with stolen property "on [his] own" to assist them further. Appellant also testified that the police told him they would "cover [his] back" if he got caught and that if he did not do as he was told, he would go back to jail.

■ If the defendant denies that he committed the offense, he will not be entitled to an entrapment instruction. *Melton v. State*, 713 S.W.2d 107, 112 (Tex.Crim.

App.1986); *see also Freeman v. State*, 998 S.W.2d 379, 382 (Tex.App.-Texarkana 1999, pet. dism'd) (noting that admission to the offense is required for the defense of entrapment). The defendant is not required to plead guilty, but he cannot introduce positive evidence that he did not commit the act. *Becker v. State*, 840 S.W.2d 743, 746–47 (Tex.App.-Houston [1st Dist.] 1992, no pet.). This is because denial of the commission of the offense is inconsistent with entrapment, as entrapment assumes that the offense was committed. *Norman v. State*, 588 S.W.2d 340, 345 (Tex.Crim.App. [Panel Op.] 1979), *cert. denied*, 446 U.S. 909, 100 S.Ct. 1836, 64 L.Ed.2d 261 (1980).

■ The State argues that Appellant has effectively denied committing the crime of burglary by denying intent to commit the burglary. Specifically, the State relies on a line of cases that hold the defense of entrapment is not available to a defendant who admits committing the conduct involved but denies having had the requisite criminal intent.[5] After examining the facts of this case, we do not believe these cases are applicable to the case at bar.

The relevant elements of burglary, as provided by section 30.02 of the Texas Penal Code, are, a person, without the consent of the owner, enters a habitation with the intent to commit a theft or felony. Tex. Penal Code Ann. § 30.02 (Vernon

Supp.1997). On direct examination Appellant's counsel asked him why he was in the Williams residence. Appellant responded, "Because Officer Pruitt had told me that I had to come up with property on my own to fence to Willie Ham ... so they could take pictures of it, surveillance." Appellant's counsel then asked him, "it's not something that you did of your own design or intent; it's something you did because you felt like if you didn't do it, you were going to get arrested anyway; is that right?," to which Appellant replied, "Yes. They told me that would end it, you know, that's all I had to do."

On cross-examination, Appellant denied that he was guilty of burglary. The State asked Appellant, "Are you guilty of burglary, sir?," to which Appellant replied, "Not the way I understand. If I had done this, you know, willfully, I could see that I would be guilty of burglary, but this wasn't no willful thing, something that I did because I wanted to do it." Here Appellant stated that although he did not want to commit the crime, he did commit the crime.[6] Appellant's denial of guilt does not amount to a denial of the offense of burglary, nor is it a denial of intent to commit the crime. Having determined that Appellant has not denied the offense of burglary, we now examine whether Appellant has raised a prima facie case of entrapment entitling him to a jury instruction.

---

5. *See Zamora v. State*, 508 S.W.2d 819, 822 (Tex.Crim.App.1974) (holding that defendant's denial of knowledge that marijuana was in his car was a denial of the offense and did not entitle him to defense of entrapment); *Hubbard v. State*, 770 S.W.2d 31, 38–39 (Tex. App.-Dallas 1989, pet. ref'd) (holding that defendant's denial of intent to deliver heroin was a denial of commission of the offense which precluded the defendant from asserting the defense of entrapment); *Smith v. State*, 733 S.W.2d 604, 604–05 (Tex.App.-Dallas

1987, pet. ref'd), *vacated on other grounds*, 761 S.W.2d 17 (Tex.Crim.App.1988).

6. Appellant's denial of guilt, based on police coercion, is not analogous to the above-mentioned line of cases whereby a party claims they did not know they were transporting or selling drugs while simultaneously claiming that the police induced them to transport or sell drugs. *See e.g., Zamora*, 508 S.W.2d at 822; *Hubbard*, 770 S.W.2d at 38–39; *Smith*, 733 S.W.2d at 605.

Assuming that Appellant's testimony meets the first prong of the two-part test, by raising evidence that he was induced by police to commit the crime, we examine whether the officer's inducements would persuade an ordinary law abiding person of average resistance to commit the crime.

The purely objective part of the *England* test is described as follows:

> The hallmark of a purely objective test for entrapment is the hypothetical person. Once the defendant can show he has been the target of persuasive police conduct, regardless of whether he was in fact persuaded to commit the offense, the focus is directed to the police conduct itself. The question becomes whether the persuasion used by the law enforcement agent was such as to cause a hypothetical person—an ordinarily law abiding person of average resistance—to commit the offense, *not* whether it was such as to cause the accused himself, given his proclivities, to commit it.

*England*, 887 S.W.2d at 908.

 The amount of persuasion used to induce an ordinary law abiding person of average resistance who is not pre-disposed to commit the offense will vary from case to case. *Torres*, 980 S.W.2d at 877; *Sebesta v. State*, 783 S.W.2d 811, 814 (Tex. App.-Houston [1st Dist.] 1990, pet. ref'd). Affirmative findings of objective inducement are generally limited to outrageous law enforcement actions occurring in instances of the rarest and most egregious government misconduct. *Hubbard*, 770 S.W.2d at 39.

 After a careful review of the evidence, we hold that an ordinary law abiding person of average resistance, in this instance, would not be persuaded by the conduct of the law enforcement agent as described by Appellant. The officer's demand that Appellant come up with stolen property on his own in order to sell it to Ham in a sting operation is not a specific inducement to burglarize a habitation. In short, an average law abiding citizen would not have been induced to commit a crime by the threat of arrest. We hold that there was no evidence to justify submission of an instruction on entrapment and that the trial court did not err in denying his jury charge for entrapment. Consequently, we overrule Appellant's issue.

### Improper Jury Argument

In Appellant's second issue, he argues that the trial court erred in denying his request for a mistrial based upon the prosecutor's improper jury argument during the punishment phase. More specifically, Appellant maintains that the prosecutor's injection of his opinion that Appellant was a liar was an improper statement on his credibility as a witness. Appellant concludes that the prosecutor's statement was harmful and that the trial court's instruction to disregard the statement could not cure the harm; thereby, warranting mistrial.

 Initially, the State argues that Appellant failed to preserve error because the prosecutor made several comments during the guilt/innocence phase which informed the jurors that Appellant had lied to them. To preserve jury argument error, a contemporaneous objection must be made and an adverse ruling obtained. *Cooks v. State*, 844 S.W.2d 697, 727 (Tex. Crim.App.), *cert. denied*, 509 U.S. 927, 113 S.Ct. 3048, 125 L.Ed.2d 732 (1993). If the objection is sustained, the defendant must request an instruction to disregard the argument and, if granted, move for a mistrial. *Id.* at 727–28. Contemporaneous objection must occur each time the objectionable jury argument is made in order to preserve error. *Cockrell v. State*, 933 S.W.2d 73, 89 (Tex.Crim.App.1996), *cert.*

*denied,* 520 U.S. 1173, 117 S.Ct. 1442, 137 L.Ed.2d 548 (1997); *McFarland v. State,* 845 S.W.2d 824, 840 (Tex.Crim.App.1992), *cert. denied,* 508 U.S. 963, 113 S.Ct. 2937, 124 L.Ed.2d 686 (1993).

The State points to many examples in the record, it claims, where the prosecutor insinuates that Appellant lied to the jury without objection by Appellant. After careful review of the record, with particular scrutiny paid to the comments pointed out by the State in its brief, we disagree that Appellant failed to properly object when called a liar. We conclude that Appellant has successfully preserved his error for review and we now turn to our substantive analysis.

■■■■ Appellant's argument stems from the following:

[Prosecutor]: ... the State will remind you of one more thing: He took that witness stand and he lied to you.

[Defense Counsel]: Objection to the personal opinion of the prosecutor.

[Court]: Sustained.

[Defense Counsel]: Ask the Court to instruct the jury to disregard.

[Court]: Jury will disregard the opinion of the prosecutor.

[Defense Counsel]: Request a mistrial.

[Court]: Denied.

■■■■ The purpose of closing argument is to facilitate the jury's proper analysis of the evidence presented at trial so that it may arrive at a just and reasonable conclusion based on the admitted evidence alone. *Coggeshall v. State,* 961 S.W.2d 639, 642 (Tex.App.-Fort Worth 1998, pet. ref'd). For jury argument to be proper it must fall within one of the following four categories: (1) summation of the evidence; (2) reasonable deduction from the evidence; (3) response to argument of opposing counsel; or (4) plea for law enforcement. *Cooks,* 844 S.W.2d at 727; *Coggeshall,* 961 S.W.2d at 642. Even in instances where an argument is outside of one of these areas, an instruction to disregard the remarks will normally cure the error, unless "in light of the record as a whole it was extreme or manifestly improper, violative of a mandatory statute, or injected new facts harmful to the accused," in which case the error is reversible. *Borjan v. State,* 787 S.W.2d 53, 57 (Tex.Crim.App.1990); *accord Cooks,* 844 S.W.2d at 727.

■■■■ The prosecution is afforded a wide degree of latitude in drawing reasonable deductions from the evidence so long as the inferences drawn are reasonable, fair, legitimate, and offered in good faith. *Gaddis v. State,* 753 S.W.2d 396, 398 (Tex. Crim.App.1988). Prosecutors are allowed to argue their opinions about cases so long as those opinions are based on the evidence admitted at trial. *Barnard v. State,* 730 S.W.2d 703, 718 (Tex.Crim.App.1987), *cert. denied,* 485 U.S. 929, 108 S.Ct. 1098, 99 L.Ed.2d 261 (1988); *Mendoza v. State,* 840 S.W.2d 697, 701 (Tex.App.-Corpus Christi 1992, no pet.).

■■■■ Specifically, a prosecutor is allowed to argue that a defense witness is not worthy of belief. *Satterwhite v. State,* 858 S.W.2d 412, 425 (Tex.Crim.App.), *cert. denied,* 510 U.S. 970, 114 S.Ct. 455, 126 L.Ed.2d 387 (1993). Arguing that a witness is lying is an argument that the witness is not worthy of belief. *Gaffney v. State,* 937 S.W.2d 540, 544 (Tex.App.-Texarkana 1996, pet. ref'd). Even more to the point, an argument that the defendant lied on the stand has been held not to be improper argument. *Id.* at 544. Where the defendant testifies, his credibility is placed in question, and the prosecution has the right to attack his veracity in the same manner as any other witness. *Id.* at 543;

*Adams v. State,* 813 S.W.2d 698, 700 (Tex. App.-Houston [1st Dist.] 1991, pet. ref'd).

 Assuming *arguendo* that the prosecutor's argument was improper, the question remains whether the trial court abused its discretion in denying the mistrial. *Jackson v. State,* 50 S.W.3d 579, 590 (Tex.App.-Fort Worth 2001, pet. ref'd). Granting of a mistrial should be an "exceedingly uncommon remedy." *Id.* at 588 (citing *Bauder v. State,* 921 S.W.2d 696, 698 (Tex.Crim.App.1996)). We review the trial court's denial of a mistrial deferentially under an abuse of discretion standard. *Id.* (citing *Ladd v. State,* 3 S.W.3d 547, 567 (Tex.Crim.App.1999), *cert. denied,* 529 U.S. 1070, 120 S.Ct. 1680, 146 L.Ed.2d 487 (2000)).

Resolution of the issue as to whether the trial court erred in denying the mistrial depends upon whether the instruction to the jury cured any prejudicial effect. *Id.* at 589–90; *Faulkner v. State,* 940 S.W.2d 308, 312 (Tex.App.-Fort Worth 1997, pet. ref'd) (en banc op on reh'g). The correct inquiry is whether the argument was "extreme, manifestly improper, injected new and harmful facts into the case, or violated a mandatory statutory provision and was thus so inflammatory that an instruction to disregard could not cure its prejudicial effect." *Jackson,* 50 S.W.3d at 589–90; *Faulkner,* 940 S.W.2d at 312. If the instruction cured any harm caused by the improper argument, the reviewing court should find that the trial court did not err. *Jackson,* 50 S.W.3d at 590.

An instruction to the jury to disregard will normally cure any prejudicial effect of an argument. *Borjan,* 787 S.W.2d at 57; *Gallegos v. State,* 918 S.W.2d 50, 57 (Tex. App.-Corpus Christi 1996, pet. ref'd) (holding instruction to disregard cured any harm in prosecution's argument that defendant lied on stand). In this case, we believe that the trial court's prompt in-

struction to the jury cured any harm. *Borjan,* 787 S.W.2d at 57; *Jackson,* 50 S.W.3d at 589–90; *Faulkner,* 940 S.W.2d at 312. Consequently, we overrule Appellant's second issue.

## CONCLUSION

Having overruled Appellant's issue in his appeal for writ of habeas corpus relief, and having overruled both of Appellant's issues in his direct appeal, we affirm the trial court's judgments.