COURT
OF APPEALS

SECOND DISTRICT
OF TEXAS

FORT WORTH

 

 

NO. 2-07-243-CR

 

 

 

HENRI SHAWN KEETON                                                        APPELLANT

A/K/A SHAWN H. KIETH

                                                   V.

 

THE STATE OF TEXAS                                                                STATE

 

------------

 

FROM CRIMINAL DISTRICT COURT NO. 1 OF TARRANT COUNTY

 

------------

 

MEMORANDUM
OPINION[1]

 

------------

I.  Introduction

Appellant Henri Shawn Keeton
appeals his conviction for unauthorized use of a vehicle.  In one point, Keeton contends that the trial
court erred by failing to instruct the jury on the defense of entrapment.  We will affirm.

 

 








II.  Factual and Procedural Background

In March 2007, at
approximately 10:00 a.m., the Fort Worth police department parked a Abait vehicle@ on a curb
in a high-crime area of the city. 
Detective Joe Harder, who leads the auto theft task force in Fort Worth,
testified at Keeton=s trial that
bait cars are vehicles, including both cars and pickup trucks, that the police
have specially equipped with a GPS device, infrared lights, and cameras that
record people in the vehicle.  The cars
are set to alert the police department silently when a door, trunk lid, or tool
box (depending on the make of the bait car) is opened.  When someone gets into a bait car and drives
it, the police are able to track the vehicle via the GPS device.  One of the infrared lights, which allows the
video-recording cameras to pick up a picture even at night, is angled toward
the driver=s seat and
is activated when a door is opened.  The
detective testified that the police essentially park the bait car, walk away,
and do not touch the vehicle until someone has triggered one of the silent
alarms, at which point the police use the GPS device to track the vehicle and
arrest the person illegally driving it.








The bait car in this case was
actually a pickup truck.  It was left
unlocked, with the windows partially rolled down, and the ignition keys lying
on the console.  Approximately twelve
hours after the pickup truck was parked, the vehicle=s silent alarm alerted the police that one of the doors had opened and
closed immediately.  The truck did not
become mobile, so Detective Harder decided to wait before moving in on it.  Almost two hours later, at 11:41 p.m., the
detective received an alert from the truck=s silent alarm that the truck had become mobile.  

At that point, Detective
Harder coordinated with officers in the field and, using the GPS tracking
device, told the officers the direction in which the truck was moving.  One of those field agents, Officer
Willingham, testified at Keeton=s trial that, based on Detective Harder=s instructions, he and another officer located the truck, pulled it
over, and discovered Keeton in the driver=s seat.  Detective Harder
additionally testified that he arrived on the scene shortly after Keeton was
stopped, pulled the videotape from the truck=s camera, watched that video in his patrol car, and saw on the video
Keeton driving the truck.  The video
showing Keeton driving the truck was admitted into evidence and played for the
jury.








At the conclusion of the
trial, the jury deadlocked on whether Keeton had committed theft, which was the
first charge against Keeton in the indictment, but found Keeton guilty of
unauthorized use of a vehicle, which was the second charge in the
indictment.  At the punishment phase of
the trial, Keeton pleaded true to previously being convicted of two state jail
felony offenses.  The jury accordingly
sentenced Keeton to ten years= incarceration, and the trial court entered a judgment consistent with
the jury=s finding.  Keeton now appeals.

III.  Entrapment

A.     Jury Charge on a Defensive Theory

A charge on a defensive issue
is required if the accused presents affirmative evidence that would constitute
a defense to the crime charged and a jury charge is properly requested.  Miller v. State, 815 S.W.2d 582, 585
(Tex. Crim. App. 1991); Barnes v. State, 70 S.W.3d 294, 304 (Tex. App.CFort Worth 2002, pet. ref=d).  In determining whether
evidence raises a defense, the credibility of the evidence is not at issue.  Muniz v. State, 851 S.W.2d 238, 254
(Tex. Crim. App.), cert. denied, 510 U.S. 837 (1993); Barnes, 70
S.W.3d at 304.  In other words, if a
defendant produces evidence raising each element of a requested defensive
instruction, that defendant is entitled to the instruction regardless of the
source and strength of the evidence.  Hamel
v. State, 916 S.W.2d 491, 493 (Tex. Crim. App. 1996); Barnes, 70
S.W.3d at 304.








Unlike legal challenges to
the sufficiency of the evidence, we review the evidence offered in support of
the defensive theory in the light most favorable to the defense.  Barnes, 70 S.W.3d at 304; Brazelton
v. State, 947 S.W.2d 644, 646 (Tex. App.CFort Worth 1997, no pet.).  Appellate
review of error in a jury charge involves a two-step process.  Abdnor v. State, 871 S.W.2d 726, 731
(Tex. Crim. App. 1994).  Initially, we
must determine whether error occurred. 
If so, we must then evaluate whether sufficient harm resulted from the
error to require reversal.  Id. at
731-32.  

Error in the charge, if
timely objected to in the trial court, requires reversal if the error was Acalculated to injure the rights of [the] defendant,@ which means no more than that there must be some harm to the
accused from the error.  Tex. Code Crim. Proc. Ann. art. 36.19
(Vernon 2006); see also Abdnor, 871 S.W.2d at 731-32; Almanza v.
State, 686 S.W.2d 157, 171 (Tex. Crim. App. 1985) (op. on reh=g).  In other words, a properly
preserved error will require reversal as long as the error is not
harmless.  Almanza, 686 S.W.2d at
171.  In making this determination, Athe actual degree of harm must be assayed in light of the entire jury
charge, the state of the evidence, including the contested issues and weight of
probative evidence, the argument of counsel and any other relevant information
revealed by the record of the trial as a whole.@  Id.; see also Ovalle
v. State, 13 S.W.3d 774, 786 (Tex. Crim. App. 2000).

B.     Jury Charge on Entrapment

Texas Penal Code section 8.06(a) establishes,

 








It is a defense to prosecution that the actor
engaged in the conduct charged because he was induced to do so by a law
enforcement agent using persuasion or other means likely to cause persons to
commit the offense.  Conduct merely
affording a person an opportunity to commit an offense does not constitute
entrapment.

 

Tex. Penal Code Ann. ' 8.06(a)
(Vernon 2003).  Thus, entrapment is a
defensive theory.  See Tex. Penal Code Ann. ' 2.03(c),(d) (Vernon 2003).  If
evidence supporting the defense of entrapment is admitted, the issue must be
submitted to the jury with the instruction that a reasonable doubt on the issue
requires acquittal.  Id. ' 2.03(d).

Entrapment exists if the
criminal intent originates in the mind of the police agent and the agent then
induces the accused to commit the offense. 
Barnes, 70 S.W.3d at 304; Torres v. State, 980 S.W.2d 873,
875 (Tex. App.CSan Antonio
1998, no pet.).  Conversely, entrapment
does not exist where the police agent merely furnishes the opportunity for the
commission of the offense.  Tex. Penal Code Ann. ' 8.06(a).








The test for entrapment under
section 8.06 is a two-pronged test composed of subjective and objective
elements.  England v. State, 887
S.W.2d 902, 910 (Tex. Crim. App. 1994); McGann v. State, 30 S.W.3d 540,
545 (Tex. App.CFort Worth
2000, pet. ref=d).  For the subjective element, the accused must
show that he was induced by law enforcement to engage in the illegal
conduct.  England, 887 S.W.2d at
913.  The accused who claims entrapment
must therefore produce evidence that the police actually and in fact induced
him into committing the charged offense. 
Id.  

Once the subjective element
of inducement is shown, the accused must additionally demonstrate how he meets
the objective element of section 8.06.  Id.
at 914.  For this second element, the
accused must show that the persuasion used by the police was such as to cause
an ordinarily law abiding person of average resistance to nevertheless commit
the offense.  Id.  The amount of persuasion that it takes to
meet this test will vary from case to case, but examples of conduct that may
meet this test include pleas based on extreme need, sympathy, or close personal
friendship; offers of inordinate sums of money; and extreme pleas of need due to
desperate illness.  Guia v. State,
220 S.W.3d 197, 204 (Tex. App.CDallas 2007, pet. ref=d); Campbell v. State, 832 S.W.2d 128, 130 (Tex. App.CCorpus Christi 1992, pet. ref=d); Becerra v. State, No. 05-99-00412-CR, 2000 WL 124683, at *2
(Tex. App.CDallas, Feb.
3, 2000, pet. ref=d) (not
designated for publication).

IV.  Keeton=s Entrapment Claim








In his sole point, Keeton
argues that the trial court erred by failing to instruct the jury on the
defense of entrapment.  At trial, only two
police officers testified; Keeton did not testify or offer any other supporting
testimony.  The testimony of the officers
was that they had no interaction at all with Keeton until after he was pulled
over for driving the pickup truck. 
Keeton did not present any evidence whatsoever showing the subjective
impact on him of the officers= leaving the bait car so situated.[2]








Based on this record,
therefore, Keeton did not offer any evidence to meet the first element of
section 8.06Cthat the officers
in fact induced him into driving the car. 
See Tex. Penal Code Ann.
' 8.06(a); Gomez v. State, No. 14-00-01023-CR, 2002 WL 480206,
at *5 (Tex. App.CHouston
[14th Dist.] Mar. 28, 2002, pet. ref=d) (not designated for publication) (holding that inducement was not
established where the defendant did not testify and none of the officers
testified about the specifics of the conversations they had with the
defendant); Becerra, 2000 WL 124683, at *2 (holding that where the
defendant did not testify and there was no other testimony as to why she
committed the crime, inducement was not established); Hill v. State, No.
C14-92-01005-CR, 1994 WL 268187, at *3 (Tex. App.CHouston [14th Dist.] June 16, 1994, no pet.) (not designated for
publication) (holding that a jury charge on entrapment was not required where
the defendant presented no affirmative evidence establishing that he was
induced into committing the crime).

Furthermore, Keeton presented
no evidence establishing the second, objective test prong of section 8.06.  See Tex.
Penal Code Ann. ' 8.06.  Keeton did elicit testimony that the police
left the bait car with the windows partially down, the doors unlocked, and the
keys lying on the console.  But he did
not present any evidence or elicit any further testimony indicating any persuasion
from the police or otherwise showing that an ordinary, law abiding person of
average resistance would steal a car just because it may have been an easy
target.  See England, 887 S.W.2d
at 914.  The evidence presented
demonstrated that the police merely afforded Keeton the opportunity to steal
the pickup truck, not that the officers in any way entrapped Keeton.  See Tex.
Penal Code Ann. ' 8.06(a); England,
887 S.W.2d at 914.

Because Keeton did not
present any evidence that would meet either the subjective or objective prongs
of section 8.06, he was not entitled to a jury charge on the defense of
entrapment, and the trial court did not err by denying his request for such an
instruction.  See Tex. Penal Code Ann. ' 2.03(c); Miller, 815 S.W.2d at 585.  Accordingly, we overrule Keeton=s sole point.

 

 








V.  Conclusion

Having overruled Keeton=s sole point, we affirm the trial court=s judgment.

 

SUE WALKER

JUSTICE    

 

PANEL F:    GARDNER, WALKER, and MCCOY, JJ.

                                                    

DO
NOT PUBLISH

Tex. R. App. P. 47.2(b)

 

DELIVERED:
March 20, 2008

 

 











[1]See Tex. R. App. P. 47.4.





[2]In
fact, through the questions of Keeton=s attorney on
cross-examination of the officers and through the attorney=s
statements in closing arguments, Keeton appeared to posit that someone had
opened the door at 10:00 p.m., removed the keys, and given them to Keeton under
the guise of ownership (i.e., someone told Keeton that he or she owned the
truck and gave Keeton the keys and permission to drive it).  In this extremely broad reading of the
record, therefore, the only evidence adduced indicated that Keeton was claiming
that someone else, not the police, induced him into driving the vehicle.