

# COURT OF APPEALS
## SECOND DISTRICT OF TEXAS
## FORT WORTH

**NO. 2-07-243-CR**

HENRI SHAWN KEETON                                                    APPELLANT
A/K/A SHAWN H. KIETH

V.

THE STATE OF TEXAS                                                          STATE

------------

FROM CRIMINAL DISTRICT COURT NO. 1 OF TARRANT COUNTY

------------

## MEMORANDUM OPINION[1]

------------

### I. INTRODUCTION

Appellant Henri Shawn Keeton appeals his conviction for unauthorized use of a vehicle. In one point, Keeton contends that the trial court erred by failing to instruct the jury on the defense of entrapment. We will affirm.

---

[1] *See* TEX. R. APP. P. 47.4.

## II. FACTUAL AND PROCEDURAL BACKGROUND

In March 2007, at approximately 10:00 a.m., the Fort Worth police department parked a "bait vehicle" on a curb in a high-crime area of the city. Detective Joe Harder, who leads the auto theft task force in Fort Worth, testified at Keeton's trial that bait cars are vehicles, including both cars and pickup trucks, that the police have specially equipped with a GPS device, infrared lights, and cameras that record people in the vehicle. The cars are set to alert the police department silently when a door, trunk lid, or tool box (depending on the make of the bait car) is opened. When someone gets into a bait car and drives it, the police are able to track the vehicle via the GPS device. One of the infrared lights, which allows the video-recording cameras to pick up a picture even at night, is angled toward the driver's seat and is activated when a door is opened. The detective testified that the police essentially park the bait car, walk away, and do not touch the vehicle until someone has triggered one of the silent alarms, at which point the police use the GPS device to track the vehicle and arrest the person illegally driving it.

The bait car in this case was actually a pickup truck. It was left unlocked, with the windows partially rolled down, and the ignition keys lying on the console. Approximately twelve hours after the pickup truck was parked, the vehicle's silent alarm alerted the police that one of the doors had opened

and closed immediately. The truck did not become mobile, so Detective Harder decided to wait before moving in on it. Almost two hours later, at 11:41 p.m., the detective received an alert from the truck's silent alarm that the truck had become mobile.

At that point, Detective Harder coordinated with officers in the field and, using the GPS tracking device, told the officers the direction in which the truck was moving. One of those field agents, Officer Willingham, testified at Keeton's trial that, based on Detective Harder's instructions, he and another officer located the truck, pulled it over, and discovered Keeton in the driver's seat. Detective Harder additionally testified that he arrived on the scene shortly after Keeton was stopped, pulled the videotape from the truck's camera, watched that video in his patrol car, and saw on the video Keeton driving the truck. The video showing Keeton driving the truck was admitted into evidence and played for the jury.

At the conclusion of the trial, the jury deadlocked on whether Keeton had committed theft, which was the first charge against Keeton in the indictment, but found Keeton guilty of unauthorized use of a vehicle, which was the second charge in the indictment. At the punishment phase of the trial, Keeton pleaded true to previously being convicted of two state jail felony offenses. The jury

3

accordingly sentenced Keeton to ten years' incarceration, and the trial court entered a judgment consistent with the jury's finding. Keeton now appeals.

### III. ENTRAPMENT

#### A. Jury Charge on a Defensive Theory

A charge on a defensive issue is required if the accused presents affirmative evidence that would constitute a defense to the crime charged and a jury charge is properly requested. *Miller v. State*, 815 S.W.2d 582, 585 (Tex. Crim. App. 1991); *Barnes v. State*, 70 S.W.3d 294, 304 (Tex. App.—Fort Worth 2002, pet. ref'd). In determining whether evidence raises a defense, the credibility of the evidence is not at issue. *Muniz v. State*, 851 S.W.2d 238, 254 (Tex. Crim. App.), *cert. denied*, 510 U.S. 837 (1993); *Barnes*, 70 S.W.3d at 304. In other words, if a defendant produces evidence raising each element of a requested defensive instruction, that defendant is entitled to the instruction regardless of the source and strength of the evidence. *Hamel v. State*, 916 S.W.2d 491, 493 (Tex. Crim. App. 1996); *Barnes*, 70 S.W.3d at 304.

Unlike legal challenges to the sufficiency of the evidence, we review the evidence offered in support of the defensive theory in the light most favorable to the defense. *Barnes*, 70 S.W.3d at 304; *Brazelton v. State*, 947 S.W.2d 644, 646 (Tex. App.—Fort Worth 1997, no pet.). Appellate review of error in a jury charge involves a two-step process. *Abdnor v. State*, 871 S.W.2d 726,

4

731 (Tex. Crim. App. 1994). Initially, we must determine whether error occurred. If so, we must then evaluate whether sufficient harm resulted from the error to require reversal. *Id.* at 731-32.

Error in the charge, if timely objected to in the trial court, requires reversal if the error was "calculated to injure the rights of [the] defendant," which means no more than that there must be *some* harm to the accused from the error. TEX. CODE CRIM. PROC. ANN. art. 36.19 (Vernon 2006); *see also Abdnor*, 871 S.W.2d at 731-32; *Almanza v. State*, 686 S.W.2d 157, 171 (Tex. Crim. App. 1985) (op. on reh'g). In other words, a properly preserved error will require reversal as long as the error is not harmless. *Almanza*, 686 S.W.2d at 171. In making this determination, "the actual degree of harm must be assayed in light of the entire jury charge, the state of the evidence, including the contested issues and weight of probative evidence, the argument of counsel and any other relevant information revealed by the record of the trial as a whole." *Id.*; *see also Ovalle v. State*, 13 S.W.3d 774, 786 (Tex. Crim. App. 2000).

**B.    Jury Charge on Entrapment**

Texas Penal Code section 8.06(a) establishes,

> It is a defense to prosecution that the actor engaged in the conduct charged because he was induced to do so by a law enforcement agent using persuasion or other means likely to cause

5

persons to commit the offense.  Conduct merely affording a person an opportunity to commit an offense does not constitute entrapment.

TEX. PENAL CODE ANN. § 8.06(a) (Vernon 2003).  Thus, entrapment is a defensive theory.  *See* TEX. PENAL CODE ANN. § 2.03(c),(d) (Vernon 2003).  If evidence supporting the defense of entrapment is admitted, the issue must be submitted to the jury with the instruction that a reasonable doubt on the issue requires acquittal.  *Id.* § 2.03(d).

Entrapment exists if the criminal intent originates in the mind of the police agent and the agent then induces the accused to commit the offense.  *Barnes*, 70 S.W.3d at 304; *Torres v. State*, 980 S.W.2d 873, 875 (Tex. App.—San Antonio 1998, no pet.).  Conversely, entrapment does not exist where the police agent merely furnishes the opportunity for the commission of the offense.  TEX. PENAL CODE ANN. § 8.06(a).

The test for entrapment under section 8.06 is a two-pronged test composed of subjective and objective elements.  *England v. State*, 887 S.W.2d 902, 910 (Tex. Crim. App. 1994); *McGann v. State*, 30 S.W.3d 540, 545 (Tex. App.—Fort Worth 2000, pet. ref'd).  For the subjective element, the accused must show that he was induced by law enforcement to engage in the illegal conduct.  *England*, 887 S.W.2d at 913.  The accused who claims

6

entrapment must therefore produce evidence that the police actually and in fact induced him into committing the charged offense. *Id.*

Once the subjective element of inducement is shown, the accused must additionally demonstrate how he meets the objective element of section 8.06. *Id.* at 914. For this second element, the accused must show that the persuasion used by the police was such as to cause an ordinarily law abiding person of average resistance to nevertheless commit the offense. *Id.* The amount of persuasion that it takes to meet this test will vary from case to case, but examples of conduct that may meet this test include pleas based on extreme need, sympathy, or close personal friendship; offers of inordinate sums of money; and extreme pleas of need due to desperate illness. *Guia v. State*, 220 S.W.3d 197, 204 (Tex. App.—Dallas 2007, pet. ref'd); *Campbell v. State*, 832 S.W.2d 128, 130 (Tex. App.—Corpus Christi 1992, pet. ref'd); *Becerra v. State*, No. 05-99-00412-CR, 2000 WL 124683, at *2 (Tex. App.—Dallas, Feb. 3, 2000, pet. ref'd) (not designated for publication).

## IV. KEETON'S ENTRAPMENT CLAIM

In his sole point, Keeton argues that the trial court erred by failing to instruct the jury on the defense of entrapment. At trial, only two police officers testified; Keeton did not testify or offer any other supporting testimony. The testimony of the officers was that they had no interaction at all with Keeton

7

until after he was pulled over for driving the pickup truck. Keeton did not present any evidence whatsoever showing the subjective impact on him of the officers' leaving the bait car so situated.[2]

Based on this record, therefore, Keeton did not offer any evidence to meet the first element of section 8.06—that the officers in fact induced him into driving the car. *See* TEX. PENAL CODE ANN. § 8.06(a); *Gomez v. State*, No. 14-00-01023-CR, 2002 WL 480206, at *5 (Tex. App.—Houston [14th Dist.] Mar. 28, 2002, pet. ref'd) (not designated for publication) (holding that inducement was not established where the defendant did not testify and none of the officers testified about the specifics of the conversations they had with the defendant); *Becerra*, 2000 WL 124683, at *2 (holding that where the defendant did not testify and there was no other testimony as to why she committed the crime, inducement was not established); *Hill v. State*, No. C14-92-01005-CR, 1994 WL 268187, at *3 (Tex. App.—Houston [14th Dist.] June 16, 1994, no pet.) (not designated for publication) (holding that a jury charge

---

[2] In fact, through the questions of Keeton's attorney on cross-examination of the officers and through the attorney's statements in closing arguments, Keeton appeared to posit that someone had opened the door at 10:00 p.m., removed the keys, and given them to Keeton under the guise of ownership (i.e., someone told Keeton that he or she owned the truck and gave Keeton the keys and permission to drive it). In this extremely broad reading of the record, therefore, the only evidence adduced indicated that Keeton was claiming that *someone else*, not the police, induced him into driving the vehicle.

on entrapment was not required where the defendant presented no affirmative evidence establishing that he was induced into committing the crime).

Furthermore, Keeton presented no evidence establishing the second, objective test prong of section 8.06. *See* TEX. PENAL CODE ANN. § 8.06. Keeton did elicit testimony that the police left the bait car with the windows partially down, the doors unlocked, and the keys lying on the console. But he did not present any evidence or elicit any further testimony indicating any persuasion from the police or otherwise showing that an ordinary, law abiding person of average resistance would steal a car just because it may have been an easy target. *See England*, 887 S.W.2d at 914. The evidence presented demonstrated that the police merely afforded Keeton the opportunity to steal the pickup truck, not that the officers in any way entrapped Keeton. *See* TEX. PENAL CODE ANN. § 8.06(a); *England*, 887 S.W.2d at 914.

Because Keeton did not present any evidence that would meet either the subjective or objective prongs of section 8.06, he was not entitled to a jury charge on the defense of entrapment, and the trial court did not err by denying his request for such an instruction. *See* TEX. PENAL CODE ANN. § 2.03(c); *Miller*, 815 S.W.2d at 585. Accordingly, we overrule Keeton's sole point.

## V. CONCLUSION

Having overruled Keeton's sole point, we affirm the trial court's judgment.


SUE WALKER
JUSTICE

PANEL F:   GARDNER, WALKER, and MCCOY, JJ.

DO NOT PUBLISH
TEX. R. APP. P. 47.2(b)

DELIVERED: March 20, 2008

10