COURT OF APPEALS
SECOND DISTRICT OF TEXAS
FORT WORTH
 
NO. 2-03-195-CR
  
  
CURTIS 
WAYNE POPE JR.                                                      APPELLANT
 
V.
  
THE 
STATE OF TEXAS                                                                  STATE
 
  
------------
 
FROM 
THE 396TH DISTRICT COURT OF TARRANT COUNTY
 
------------
 
OPINION
 
------------
INTRODUCTION
        A 
jury found appellant, Curtis Wayne Pope, Jr., guilty of murder, and the trial 
judge sentenced him to life imprisonment. In six points on appeal, Pope 
complains that the trial court erred by (1) allowing the State to elicit 
testimony regarding Pope’s appointed DNA expert in violation of the 
work-product component of his attorney-client privilege, (2 & 3) excluding 
testimony elicited by Pope on cross-examination of certain State witnesses in 
violation of Pope’s Sixth Amendment right of confrontation, (4) improperly 
instructing the jury, (5) allowing improper jury argument by the State, and (6) 
overruling his motion for new trial.[1]  We will 
affirm.
FACTUAL AND PROCEDURAL BACKGROUND
        On 
February 22, 2000, the body of a stabbing victim was found inside a trailer at a 
construction site. Blood was found on the office furniture, the floor of the 
office, and the victim’s clothes. DNA testing of the blood conducted by 
GeneScreen, an independent lab, revealed that some of this blood was from Pope, 
and he was charged with murder. A plea of not guilty was entered on his behalf.
        Prior 
to trial, Pope filed a Motion for Independent Examination of DNA Evidence, 
requesting that Robert Benjamin be permitted to “review and examine all 
reports and testing already performed . . . for purposes of deoxyribonucleic 
acid (DNA) testing and comparison.” The trial court granted the motion, and 
the defense later designated Dr. Benjamin as its DNA expert.
        At 
trial, Pope’s defense counsel cross-examined the State’s DNA experts, 
William Watson and Jamie King, regarding the method of DNA testing used, the 
level of “professional judgment” needed to perform DNA analysis, and whether 
errors were made in the analysis. On redirect, the trial court allowed the 
State, over objection of defense counsel, to introduce testimony regarding Dr. 
Benjamin’s qualifications, the materials provided to him, and whether he had 
requested additional testing. Pope’s counsel objected to this line of 
questioning, partially on the grounds that it violated his client’s 
work-product and attorney-client privileges. The trial court overruled this 
objection and allowed the testimony. Defense counsel did not call Dr. Benjamin 
to testify at trial, nor did they present evidence that would indicate to the 
jury that the defense had even employed a DNA expert.
        Part 
of defense counsel’s trial strategy concerned the mislabeling of samples 
submitted for DNA testing. In that regard, defense counsel sought to elicit 
testimony on cross-examination from Karla Carmichael and Aliece Watts regarding 
problems at the Fort Worth Police Department’s Crime Lab (the “Crime 
Lab”).[2] The testimony was presented outside the 
presence of the jury in a bill of exception.
        In 
the bill, Carmichael testified that there had been some problems at the Crime 
Lab with the “misidentification . . . of samples.” However, when questioned 
further, Carmichael testified only to a problem with the ventilation hoods at 
the lab and to problems involving DNA testing performed by the Crime Lab. On 
redirect, Carmichael testified that none of the problems had anything to do with 
the handling or processing of evidence, but arose in the context of DNA 
analysis, and that the Crime Lab did not do the DNA testing in this case, but 
instead submitted the samples to Orchid Cellmark[3] 
for DNA testing.
        In 
the bill, Watts acknowledged that there had been “some problems with the 
handling of evidence” at the Crime Lab and that there had been some 
investigations of the handling of evidence at the Crime Lab, but stated that she 
did not know if the accusations had ever been substantiated. Further, although 
Watts acknowledged that there had been accusations of mishandling of evidence, 
and that as a result there existed the possibility that the evidence in this 
case could have been mishandled, she indicated by her testimony that she had no 
evidence that the samples in this case had been mishandled.
        Pope 
was found guilty by the jury and sentenced to life imprisonment by the trial 
judge. On the day that the jury returned its verdict, Carmichael was placed on 
administrative leave from her employment at the Crime Lab. She was subsequently 
terminated for, among other things, “[her] failure to perform assigned work in 
a satisfactory manner” and “[her] carelessness or negligence in performing 
work.”
        Pope 
filed this appeal on May 9, 2003. He later filed a Motion for New Trial 
asserting violations of his due process rights and his Sixth Amendment right to 
confrontation. Pope’s Motion for New Trial was overruled by operation of law 
on July 23, 2003.
WORK-PRODUCT PRIVILEGE
        In 
his first point, Pope complains that the work-product component of his 
attorney-client privilege[4] was violated when the 
trial court allowed the State to put on testimony indicating that his DNA 
expert, Dr. Benjamin, had been provided with the State’s DNA testing and had 
failed to request additional testing or question the testing.[5]  
Further, Pope complains that the trial court committed error when it allowed the 
State to put on this testimony and then point out that Dr. Benjamin was not 
called by the defense to testify. Pope argues that this violates the 
work-product component of his attorney-client privilege because the jury could 
have only concluded from this testimony (and the State’s closing argument) 
that Dr. Benjamin believed that the testing was properly done.
        The 
State contends that the testimony regarding the materials provided to Dr. 
Benjamin was not work-product and therefore not privileged and that the 
prosecution may comment on a defendant’s failure to call an expert witness 
when the comment is directed at a disputed issue.
A. Standard of Review
        We 
review the trial court's decision to admit or exclude evidence under an abuse of 
discretion standard. Burden v. State, 55 S.W.3d 608, 615 (Tex. Crim. App. 
2001); Green v. State, 934 S.W.2d 92, 101-02 (Tex. Crim. App. 1996), cert. 
denied, 520 U.S. 1200 (1997); Montgomery v. State, 810 S.W.2d 372, 
379-80 (Tex. Crim. App. 1990). The test for abuse of discretion is not whether, 
in the opinion of the reviewing court, the facts present an appropriate case for 
the trial court's action; rather, it is a question of whether the court acted 
without reference to any guiding rules or principles, and the mere fact that a 
trial court may decide a matter within its discretionary authority differently 
than an appellate court does not demonstrate such an abuse. Montgomery, 
810 S.W.2d at 391. We will not reverse a trial court's ruling on the admission 
of evidence as long as the ruling is within the zone of reasonable disagreement. 
Id.
B. Analysis
Work-product
        The 
United States Supreme Court has described the work-product doctrine as 
sheltering “[a]t its core . . . the mental processes of the attorney, 
providing a privileged area within which [an attorney] can analyze and prepare 
his client's case.” Washington v. State, 856 S.W.2d 184, 187 (Tex. 
Crim. App. 1993) (quoting United States v. Nobles, 422 U.S. 225, 238, 95 
S. Ct. 2160, 2170 (1975)). The doctrine extends not only to the work-product of 
the attorney, but to the work-product of his agents. Id. Further, the 
Texas Court of Criminal Appeals has indicated that the work-product of a 
court-appointed DNA expert falls within the privilege. See Taylor v. 
State, 939 S.W.2d 148, 152 (Tex. Crim. App. 1996).
        While 
Texas privileges are found in the Texas Rules of Evidence and the Texas Rules of 
Criminal Procedure, Rule 501 of the Texas Rules of Evidence provides, in 
relevant part: “Except as otherwise provided by Constitution, by statute, by 
these rules, or by other rules prescribed pursuant to statutory authority, no 
person has a privilege to . . . (2) refuse to disclose any matter; [or] . . . 
(4) prevent another from being a witness or disclosing any matter or producing 
any object or writing.” Tex. R. Evid. 
501.
        Article 
39.14 of the Texas Code of Criminal Procedure addresses the discovery of 
work-product in a criminal case. Tex. 
Code Crim. Proc. Ann. art. 39.14 (Vernon Supp. 2004-05). Article 39.14(a) 
provides that the “work-product of counsel in the case and their investigators 
and their notes or report” is exempt from discovery. Id. art. 39.14(a). 
However, the Texas Code of Criminal Procedure also provides that a trial court 
may order disclosure of the “name and address of each person the other party 
may use at trial to present evidence under Rules 702, 703, and 705” of the 
Texas Rules of Evidence. Id. art. 39.14(b). The State argues that because 
the Code of Criminal Procedure in article 39.14(a) acknowledges that a party’s 
work-product is exempt from disclosure, while at the same time providing for the 
discovery of a testifying expert’s identity in article 39.14(b), the Texas 
legislature has, by implication, declared that a testifying expert’s identity 
is not privileged work-product. We agree that a testifying expert’s identity, 
once disclosed, is not work-product.
        As 
pointed out by the State, the defense designated Dr. Benjamin as their 
testifying expert for trial. Because they did so, we conclude that Dr. 
Benjamin’s identity is no longer privileged.[6]  
See art. 39.14(a) & (b). Further, testimony regarding the 
witnesses’ knowledge of Dr. Benjamin’s qualifications, and the materials 
provided to him, cannot be privileged because they do not constitute 
work-product of the defense. See Nobles, 422 U.S. at 238 (stating that 
the work-product doctrine shelters, at its core, the mental processes of an 
attorney); Washington, 856 S.W.2d at 187 (indicating that the 
work-product doctrine protects, in addition to the mental processes of the 
attorney, “material prepared by agents for the attorney as well as those 
prepared by the attorney himself”). On the other hand, we believe that the 
testimony elicited by the State regarding Dr. Benjamin’s failure to request 
additional testing indirectly violated Pope’s work-product privilege because 
the testimony could have had the effect of disclosing Dr. Benjamin’s mental 
impressions regarding the absence of a need for further tests. Thus, the trial 
court abused its discretion in allowing this part of the testimony.
Harm 
Analysis
        We 
must conduct a harm analysis to determine if the error would call for reversal 
of the judgment. Tex. R. App. P. 
44.2. If the error is constitutional, we apply Rule 44.2(a) and reverse unless 
we determine beyond a reasonable doubt that the error did not contribute to 
appellant’s conviction or punishment. Tex. 
R. App. P. 44.2(a). Otherwise, we apply Rule 44.2(b) and disregard the 
error if it does not affect the appellant’s substantial rights. Tex. R. App. P. 44.2(b); see Mosley 
v. State, 983 S.W.2d 249, 259 (Tex. Crim. App. 1998) (op. on reh’g), cert. 
denied, 526 U.S. 1070 (1999); Coggeshall v. State, 961 S.W.2d 639, 
642-43 (Tex. App.—Fort Worth 1998, pet. ref’d) (en banc).
        Pope 
contends that we should employ a constitutional harm analysis arguing that the 
State’s violation of his work-product privilege implicates his Sixth Amendment 
right to effective assistance of counsel. However, constitutional error within 
the meaning of Texas Rule of Appellate Procedure 44.2(a) is an error that 
directly offends the United States Constitution or the Texas Constitution, 
without regard to any statute or rule that might also apply. See Tate v. 
State, 988 S.W.2d 887, 890 (Tex. App.—Austin 1999, pet. ref'd). Further, 
with respect to the erroneous admission or exclusion of evidence, constitutional 
error is presented only if the correct ruling was constitutionally required. Id.
        Here 
the error was in the erroneous admission of evidence in violation of Pope’s 
work-product privilege. While the work-product privilege may have some 
relationship to Pope’s Sixth Amendment right to effective assistance of 
counsel, it is not itself a constitutionally protected right. See Nobles, 
422 U.S. at 236-37, 241 n.15, 95 S. Ct. at 2169-70, 2171 n.15 (recognizing the 
work-product privilege in a criminal case is based upon public policy and 
rejecting the argument that a court order requiring disclosure of work-product 
violated respondent’s Sixth Amendment right to effective assistance of counsel 
where order was a result of respondent’s election to make “testimonial 
use” of report and court order was “limited and conditional”); Hickman 
v. Taylor, 329 U.S. 495, 510-11, 67 S. Ct. 385, 393 (1947) (recognizing in a 
civil case the work-product doctrine as a privilege based upon public policy). 
Further, Pope’s argument is not that he was denied the effective assistance of 
counsel at trial, but rather that if we allow this type of violation to occur it 
will make it difficult for attorneys in the future to satisfy their Sixth 
Amendment duty to fully investigate all possible defenses for fear that their 
work-product may be used against their clients. Accordingly, we conclude that 
the error in this case is not constitutional.
        Because 
we determine that the error is not constitutional, Rule 44.2(b) is applicable. 
Therefore, we are to disregard the error unless it affected appellant’s 
substantial rights. Tex. R. App. P. 
44.2(b). A substantial right is affected when the error had a substantial and 
injurious effect or influence on the jury’s verdict. King v. State, 953 
S.W.2d 266, 271 (Tex. Crim. App. 1997) (citing Kotteakos v. United States, 
328 U.S. 750, 776, 66 S. Ct. 1239, 1253 (1946)); Coggeshall, 961 S.W.2d 
at 643. In making this determination, we review the record as a whole. Kotteakos, 
328 U.S. at 764-65, 66 S. Ct. at 1248.
        As 
previously discussed, Dr. Benjamin’s identity and qualifications are not 
work-product, and the testimony regarding the materials provided to Dr. Benjamin 
was not work-product. In addition, the State’s comments regarding Pope’s 
failure to call a DNA expert were not improper because the State is entitled to 
comment on an accused’s failure to produce testimony from sources other than 
himself when it is relevant to a disputed issue, and here Pope placed the 
State’s evidence into dispute. See Jackson v. State, 17 S.W.3d 664, 674 
(Tex. Crim. App. 2000); Patrick v. State, 906 S.W.2d 481, 490-91 (Tex. 
Crim. App. 1995), cert. denied, 517 U.S. 1106 (1996); Carrillo v. 
State, 566 S.W.2d 902, 912 (Tex. Crim. App. [Panel Op.] 1978). Further, the 
testimony regarding Dr. Benjamin’s failure to request additional testing did 
not directly disclose what Dr. Benjamin’s mental impressions were, rather, the 
testimony addressed his lack of action, which one might conclude was due to an 
opinion he held. Finally, Pope’s assertion that the jury could have only come 
to the conclusion that the defense’s expert agreed with the State’s experts 
is a logical conclusion the jury could have reached from admissible evidence; 
that is, there was a DNA expert who reviewed the state’s materials but was not 
called as a witness by the defendant.
        Evidence 
of a defendant’s guilt is also a factor to be considered in any through harm 
analysis. See Motilla v. State, 78 S.W.3d 352, 358 (Tex. Crim. App. 
2002). Factors to be considered in weighing the defendant’s guilt in the harm 
analysis include the following: (1) the sufficiency of the evidence to support 
the conviction; (2) the character of the error and its connection with other 
evidence; and (3) whether the State emphasized the error. See id. at 
358-59. In this case, there was significant circumstantial evidence of Pope’s 
guilt. Pope admitted to meeting with the victim shortly before he was killed, he 
failed to keep an appointment that he and the victim had with another person 
later that evening, he possessed an unusual knife consistent with the victim’s 
wounds, and he failed to appear when trial was scheduled to begin. Further, as 
previously discussed, Pope’s work-product privilege was violated only 
indirectly, and there was sufficient admissible evidence from which the jury 
could have reached the same conclusion. Finally, although the State in its 
closing commented that if there had been a problem with the results, Pope would 
have had Dr. Benjamin or another expert testify, the State did not specifically 
mention Dr. Benjamin’s failure to request additional testing.
        Therefore, 
after reviewing the record, we conclude that, in the context of the entire case 
against appellant, the trial court’s error in admitting the testimony in 
question did not have a substantial or injurious effect on the jury’s verdict 
and did not affect appellant’s substantial rights. See King, 953 S.W.2d 
at 271. We conclude that the error was harmless. See Tex. R. App. P. 44.2(b).
        Because 
we determine that any error by the State in eliciting testimony regarding Dr. 
Benjamin’s failure to request additional testing was harmless, we need not 
address Pope’s contention that the testimony elicited by the State regarding 
Dr. Benjamin’s failure to request additional testing, when combined with the 
State’s comments regarding the defense’s failure to call a DNA expert, 
constituted a violation of Pope’s work-product. Accordingly, we overrule 
Pope’s first point.
EXCLUDED TESTIMONY OF CARMICHAEL AND WATTS
        In 
points two and three, Pope complains that the trial court erred by excluding 
certain testimony of State witnesses Carmichael and Watts in violation of 
Pope’s Sixth Amendment right to confrontation. Pope claims that the trial 
court’s exclusion of this testimony violated his Sixth Amendment right to 
confrontation because the excluded testimony “weighed on” the witnesses’ 
qualifications and credibility. Pope argues that this testimony should have been 
presented to the jury because the DNA evidence was the primary evidence 
presented against him at trial, and “proof of the ongoing problems with 
mislabeling and mishandling [of] evidence” was the only meaningful way for 
Pope to attack Carmichael’s and Watts’s credibility and qualifications. The 
State responds that the trial court did not err because the evidence is not 
relevant or admissible under Rules 401, 402, 403, 404(b), and 608(b) of the 
Rules of Evidence. We agree that the trial court did not err in excluding the 
proffered testimony.
A. Standard of Review
        As 
previously stated, we review the trial court's decision to admit or exclude 
evidence under an abuse of discretion standard. Burden, 55 S.W.3d at 608; 
Green, 934 S.W.2d at 101-02; Montgomery, 810 S.W.2d at 379-80. 
Further, the standard for reviewing the trial court's decision to limit 
cross-examination of a witness regarding credibility is whether the trial court 
abused its discretion. Cantu v. State, 939 S.W.2d 627, 635 (Tex. Crim. 
App.), cert. denied, 522 U.S. 994 (1997).
B. Analysis
        The 
Texas Rules of Evidence provide that to be admissible evidence must be relevant. 
Tex. R. Evid. 402. Evidence is 
relevant if it has “any tendency to make the existence of any fact that is of 
consequence to the determination of the action more probable or less probable 
than it would be without the evidence.” Tex. 
R. Evid. 401. In determining whether evidence is relevant, courts look to 
the purpose for offering the evidence and whether there is a direct or logical 
connection between the offered evidence and the proposition sought to be proved. 
Reed v. State, 59 S.W.3d 278, 281 (Tex. App.—Fort Worth 2001, pet. 
ref'd). Further, even if the evidence is relevant, Rule 403 mandates its 
exclusion “if its probative value is substantially outweighed by the danger of 
unfair prejudice, confusion of the issues, or misleading the jury, or by 
considerations of undue delay, or needless presentation of cumulative 
evidence.” Tex. R. Evid. 403; see 
also Jones v. State, 944 S.W.2d 642, 651 (Tex. Crim. App. 1996), cert. 
denied, 522 U.S. 832 (1997).
        The 
Sixth Amendment to the United States Constitution guarantees the right of an 
accused in a criminal prosecution to confront the witnesses against him. U.S. Const. amend. VI; Crawford v. 
Washington, 124 S. Ct. 1354, 1359 (2004); Davis v. Alaska, 415 U.S. 
308, 315, 94 S. Ct. 1105, 1110 (1974); Rankin v. State, 41 S.W.3d 335, 
344 (Tex. App.—Fort Worth, 2001 pet. ref'd). The right of confrontation 
encompasses more than the opportunity to physically confront the witnesses. Davis, 
415 U.S. at 315, 94 S. Ct. at 1110. A primary interest secured by the 
Confrontation Clause is the right of cross-examination. Id., 94 S. Ct. at 
1110.
        Cross-examination 
is the principal means by which the believability of a witness and the truth of 
his testimony are tested. Id. at 316, 94 S. Ct. at 1110. The 
cross-examiner not only is permitted to delve into the witness's story to test 
the witness's perceptions and memory, but also is traditionally allowed to 
impeach, i.e., discredit, the witness. Id. Hence, the right to 
cross-examine a testifying state witness extends to any matter that could 
reflect on the witness's credibility. Virts v. State, 739 S.W.2d 25, 
28-29 (Tex. Crim. App. 1987). This includes impeaching the witness with relevant 
evidence that might reflect bias, interest, prejudice, inconsistent statements, 
traits of character affecting credibility, or evidence that might go to any 
impairment or disability affecting the witness's credibility. Id. at 29; Rankin, 
41 S.W.3d at 345; Alexander v. State, 949 S.W.2d 772, 774-75 (Tex. 
App.—Dallas 1997, pet. ref'd). The trial judge should allow the accused great 
latitude to show any relevant fact that might tend to affect the witness's 
credibility. Virts, 739 S.W.2d at 29; Koehler v. State, 679 S.W.2d 
6, 9 (Tex. Crim. App. 1984). Nevertheless, there are several areas where 
cross-examination may be inappropriate, and in those cases, the trial judge has 
the discretion to limit cross-examination. See Delaware v. Van Arsdall, 
475 U.S. 673, 679, 106 S. Ct. 1431, 1435 (1986). A trial judge may limit 
cross-examination based on concerns about harassment, prejudice, confusion of 
the issues, the safety of the witness, or interrogation that is repetitive or 
only marginally relevant. See id.
        Here 
the excluded testimony was not directed at the credibility or qualifications of 
the witnesses, but was offered to prove that there were problems with the 
identification and handling of evidence at the Crime Lab. In that regard, the 
elicited testimony of Crime Lab employee Carmichael only established her 
knowledge of problems involving DNA testing at the Crime Lab, and the DNA 
testing in this case was not performed by the Crime Lab.
        In 
addition, although former Crime Lab employee Watts acknowledged that there had 
been some problems with the mishandling of evidence at the Crime Lab and that 
there had been some investigation into the mishandling of evidence at the lab, 
she stated that she did not know if the accusations had ever been substantiated. 
Further, although Watts testified that there existed the possibility that the 
evidence in Pope’s case had been mishandled, her testimony was based upon the 
supposition that if some evidence had been mishandled at the Crime Lab, 
it was possible that evidence in this case could have also been mishandled, and 
that not only was she unaware of its mishandling, but she did not believe the 
evidence in this case had been mishandled.
        Therefore, 
we conclude that although the testimony may have been relevant to establishing 
that there were problems with the handling of evidence at the Crime Lab, the 
trial court could have found the evidence to be irrelevant because neither 
Carmichael nor Watts testified that there were problems with the handling of the 
evidence in this case, and the testimony of Carmichael indicated that the 
problems at the Crime Lab involved DNA testing, which the Crime Lab did not 
conduct in this case. See Tex. R. 
Evid. 402. Likewise, to the extent that the evidence may have “weighed 
on” the credibility and qualifications of the witnesses, we conclude that 
trial court could have found the excluded evidence irrelevant and therefore 
inadmissible. See id; Reed, 595 S.W.3d at 281. Further, we believe 
that the trial court could have found that the evidence was inadmissible under 
Rule 403 because the trial court could have found that the probative value of 
the testimony regarding the Crime Lab’s alleged mishandling of evidence was 
substantially outweighed by the danger of misleading the jury or confusion of 
the issues. See Tex. R. Evid. 
403; Montgomery, 810 S.W.2d at 391-93 (indicating that an appellate court 
should afford deference to a trial court’s Rule 403 balancing determination, 
reversing only where the ruling lies outside the zone of reasonable 
disagreement, and providing relevant factors an appellate court should consider 
in reviewing a trial court’s Rule 403 decision).
        Accordingly, 
we hold that the trial court did not abuse its discretion in excluding the 
proffered testimony, thereby limiting Pope’s right of cross-examination. 
Pope’s second and third ponts are overruled.
JURY INSTRUCTIONS
        In 
his fifth point, Pope complains that the trial court erred in its instruction to 
the jury on the State’s burden of proof, arguing that the jury instruction 
improperly contained a definition of beyond a reasonable doubt. The State 
responds, and Pope concedes, that this court has previously ruled on this issue 
and found the instruction not to be improper. Pope requests, however, that the 
court reconsider the issue. We decline to do so.
        The 
trial court included the following in its charge to the jury regarding the 
burden of proof:
   
It is not required that the prosecution prove guilt beyond all possible doubt; 
it is required that the prosecution’s proof excludes all “reasonable 
doubt” concerning the Defendant’s guilt.
  
        As 
both Pope and the State acknowledge, this court has addressed the propriety of 
such an instruction on numerous occasions and found it not to be improper. See, 
e.g., Best v. State, 118 S.W.3d 857, 865 (Tex. App.—Fort Worth 
2003, no pet.) Accordingly, we hold that the instruction given was not improper. 
Pope’s fifth point is overruled.
IMPROPER JURY ARGUMENT
        In 
his sixth point, Pope complains that the trial court erred in overruling his 
objection to improper jury argument by the prosecutor. Specifically, Pope argues 
that the State’s remarks during closing argument were improper because they 
had the effect of accusing defense counsel of “bad faith and insincerity,” 
striking at Pope over the shoulder of his defense counsel. The State contends 
that its remarks were a proper response to closing arguments made by the 
defense.
A. Standard of Review
        The 
purpose of closing argument is to facilitate the jury's proper analysis of the 
evidence presented at trial in order to arrive at a just and reasonable 
conclusion based solely on the evidence. Barnes v. State, 70 S.W.3d 294, 
308 (Tex. App.—Fort Worth 2002, pet. ref'd). To be permissible, the State's 
jury argument must fall within one of the following four general areas: (1) 
summation of the evidence; (2) reasonable deduction from the evidence; (3) 
answer to argument of opposing counsel; or (4) pleas for law enforcement. Felder 
v. State, 848 S.W.2d 85, 94-95 (Tex. Crim. App. 1992), cert. denied, 
510 U.S. 829 (1993); Alejandro v. State, 493 S.W.2d 230, 231 (Tex. Crim. 
App. 1973). If a jury argument exceeds the bounds of proper argument, the trial 
court's erroneous overruling of a defendant's objection cannot be reversible 
error unless, in light of the record as a whole, the argument had a substantial 
and injurious effect or influence on the jury's verdict. Tex. R. App. P. 44.2(b); Martinez v. 
State, 17 S.W.3d 677, 692-93 (Tex. Crim. App. 2000); Mosley, 983 
S.W.2d at 259.
B. Analysis
        The 
State may not strike at a defendant over the shoulders of his counsel or accuse 
defense counsel of bad faith or insincerity during argument. Wilson v. State, 
938 S.W.2d 57, 61 (Tex. Crim. App. 1996), abrogated on other grounds by 
Motilla v. State, 78 S.W.3d 352 (Tex. Crim. App. 2002). Uninvited and 
unsubstantiated accusations of misconduct directed at a defendant's attorney are 
manifestly improper because they serve to inflame the minds of the jury to the 
defendant's prejudice. McMurrough v. State, 995 S.W.2d 944, 947 (Tex. 
App.—Fort Worth 1999, no pet.). A prosecutor runs a risk of improperly 
striking a defendant over the shoulder of counsel when the argument personally 
impugns opposing counsel's character. Mosley, 983 S.W.2d at 259.
        While 
defense counsel is protected from unwarranted attack by the prosecution, the 
prohibition “does not create a sanctuary to which defense counsel may retreat 
with immunity and thereby deny the prosecutor the right to reply to counsel's 
argument.” Stokes v. State, 506 S.W.2d 860, 864 (Tex. Crim. App. 1974). 
Further, a prosecutor is entitled to respond to an argument by defense counsel 
that suggests impropriety on the part of the State. See Lange v. State, 
57 S.W.3d 458, 467 (Tex. App.—Amarillo 2001, pet. ref'd) (holding that 
prosecutor's reference to having taken an oath to uphold justice was permissible 
response to defense counsel's suggestion that prosecution had improperly coached 
witness); Sandoval v. State, 52 S.W.3d 851, 858 (Tex. App.—Houston [1st 
Dist.] 2001, pet. ref'd) (holding that it was permissible for the prosecutor to 
respond to defense counsel's suggestion that the prosecution manipulated the 
testimony of a witness).
        During 
its closing, Pope’s defense counsel attacked the State’s DNA evidence and 
the presentation of the evidence by the State. They asserted that the technology 
used to test the known DNA samples was “not very reliable” and that every 
sample that the State believed to be a known sample had been “mislabeled or 
misidentified at some point in the case.” Defense counsel attacked the 
State’s presentation of evidence, implying that the State had acted improperly 
by stating that the State had done its “best to fix every little thing” 
before it was presented to the jury, that the State did not want the jury to 
“look at the work,” and that the State had allowed people to testify to 
things to which that they could not testify. The defense also suggested that the 
DNA samples in this case could have been mixed up with the samples from another 
suspect.
        The 
State responded by commenting that it was the job of defense counsel to attack 
the DNA—referring to defense counsel’s attacks on the DNA evidence as 
amounting to “smoke and mirrors,” “red herrings or rabbit trails” 
designed to throw the jury off—and by cautioning the jury not to be 
“hoodwinked, . . . buffaloed, . . . [or] spooked” by the defense’s 
arguments.
        We 
conclude that the State’s closing remarks were not suggestive of bad faith or 
insincerity on the part of opposing counsel, but were responsive to arguments of 
the defense and therefore not improper. Accordingly, we overrule Pope’s sixth 
point.
MOTION FOR NEW TRIAL
        In 
his fourth point, Pope complains that the trial court abused its discretion by 
failing to grant his motion for new trial based upon the discovery of new 
information relating to State witness Carmichael’s employment status with the 
Crime Lab. The State responds that Pope failed to establish that he was entitled 
to a new trial based upon this newly discovered evidence and that if any error 
is deemed to exist, Pope failed to preserve it. We agree that any alleged error 
was not preserved.
        To 
preserve error, the complaint on appeal must comport with the objection made at 
trial. See Thomas v. State, 723 S.W.2d 696, 700 (Tex. Crim. App. 
1986); Cate v. State, 124 S.W.3d 922, 933 (Tex. App.—Amarillo 2004, 
pet. ref’d); Brown v. State, 6 S.W.3d 571, 582 (Tex. App.—Tyler 1999, 
pet. ref’d).
        Pope’s 
Motion for New Trial complains, in relevant part, that Pope’s due process 
rights were violated when the State failed to correct the false testimony of two 
of the State’s witnesses, Sundaye Lopez and Karla Carmichael. In his motion, 
Pope alleges that Lopez and Carmichael testified falsely about whether there 
were any problems with Carmichael’s work at the Crime Lab and whether 
Carmichael was the subject of any internal investigation. Pope based his 
assertions on information obtained after trial, which revealed that on the day 
the jury returned its verdict Carmichael was placed on administrative leave from 
her employment at the Crime Lab and that she was subsequently terminated. In 
response, the State filed an affidavit from Robert L. Adkins, the Acting 
Laboratory Supervisor for the Fort Worth Police Department Forensics Laboratory, 
which indicated that “[t]here was not an investigation into the handling of 
evidence in the Fort Worth Police Department Forensic Laboratory”; that 
“[t]here was not an investigation of Sundaye Lopez”; and that “Karla 
Carmichael was investigated for failing and altering a proficiency test.” 
Further, Adkins’s affidavit provided the reasons for Carmichael’s 
termination, which included, among other things, her “failure to perform 
assigned work in a satisfactory manner” and her “carelessness or negligence 
in performing work.”
        On 
appeal, Pope complains that the trial court erred by not granting a new trial 
based upon the newly discovered evidence that Carmichael had been placed on 
administrative leave, was under investigation at the time of trial, and was 
subsequently terminated for her “failure to perform assigned work in a 
satisfactory manner” and her “carelessness or negligence in performing 
work.” Thus, Pope’s complaint on appeal is that he was not allowed to fully 
and fairly litigate Carmichael’s credibility and qualifications before the 
jury. But, his Motion for New Trial complained that his due process rights were 
violated because the State failed to correct the alleged false testimony of two 
of the State’s witnesses. We conclude that Pope’s complaint on appeal does 
not comport with Pope’s Motion for New Trial. Accordingly, we need not address 
whether the trial court abused its discretion in denying the motion. Pope’s 
fourth point is overruled.
CONCLUSION
        Because 
we overrule Pope’s six points, we affirm the trial court’s judgment.
  
  
                                                                  BOB 
MCCOY
                                                                  JUSTICE 
    
  
PANEL 
B:   HOLMAN, WALKER, and MCCOY, JJ.
 
PUBLISH
 
DELIVERED: 
December 23, 2004


NOTES
1.  
We address Pope’s points in this order for ease of discussion.
2.  
The defense also solicited testimony from Crime Lab employee Sundaye Lopez, but 
does not raise the issue of her excluded testimony on appeal.
3.  
Formerly known as GeneScreen.
4.  
Although Pope refers to the work-product privilege as a component of the 
attorney-client privilege, we note that these two privileges protect separate 
interests. See Carmona v. State, 941 S.W.2d 949, 953 (Tex. Crim. 
App. 1997).
5.  
We find nothing in the record to indicate that the State elicited testimony 
regarding Dr. Benjamin’s failure to “question the testing.”
6.  
The State also argues that by filing a motion requesting the trial court to 
order that Dr. Benjamin be permitted to receive “all reports and testing 
already performed” by one of the State’s experts, Pope “affirmatively 
waived” any privilege he might have had in the identity of Dr. Benjamin and in 
whether he received the reports.